UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LORIE B.,

                              Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.

Case No. 3:17-cv-05789-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court reverses and remands defendant's decision to deny benefits for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

In February 2014, plaintiff filed an application for supplemental security income alleging

that she became disabled beginning March 1, 2012.[1] Dkt. 8, Administrative Record (AR) 312-

317. The claim was denied on initial administrative review and on reconsideration. AR 186-234,

AR 140-85.

A hearing was held on February 1, 2016; the ALJ determined that plaintiff was not

disabled. AR 101-132. The ALJ documented her analysis at each of the five steps of the

Commissioner's sequential disability evaluation process. AR 101-132. In the first sequential

evaluation, at step one, the ALJ found that plaintiff had not engaged in substantial gainful

activity during the period from her alleged onset date of February 4, 2014. AR 106. At step two,

the ALJ found plaintiff had the following severe impairments: alcohol abuse, depression,

anxiety, status post-broken right wrist, and alcoholic cirrhosis of the liver. AR 106. At step three,

the ALJ found that plaintiff did not have an impairment or combination of impairments that met

or medically equaled the severity of one of the listed impairments. AR 107.

The ALJ found that considering all of plaintiff's impairments, including substance abuse

disorder, plaintiff has the RFC to perform light work with exceptions, but found that plaintiff

would be unable to adhere to standards of attendance and punctuality as required in general

employment. AR 109. At step four, the ALJ determined that plaintiff has no past relevant work.

AR 114. At step five, the ALJ determined that there are no jobs existing in significant numbers

in the national economy that plaintiff could perform, AR 115, and therefore, considering the

---

[1] Plaintiff argues, and defendant does not dispute, *see* Dkt. 13, that an application for supplemental security income is an application for "benefits under the other programs administered by the Social Security Administration." Dkt. 12 at 2 (citing AR 312).

limiting effects of plaintiff's impairments, including substance abuse, a finding of disabled would be appropriate. AR 115.

In the second sequential evaluation, without the effects of alcohol abuse, the ALJ found that at step two, plaintiff would continue to have the following severe impairments: depression, anxiety, status post broken right wrist, and alcoholic liver cirrhosis. AR 115. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 116. The ALJ found that considering all of plaintiff's impairments, without substance abuse disorder, plaintiff has the RFC to perform light work except:

> She can occasionally climb ladders, ropes and scaffolds. She must avoid concentrated exposure to hazards such as unprotected heights and large moving equipment. She can frequently handle, finger and feel with her right hand. She can balance, stoop, crouch, crawl and kneel without limitation. She has no limits on climbing ramps and stairs. She can understand, remember, and carry out simple instructions in a setting with no strict production pace. She can work in proximity of coworkers but should not have teamwork assignments and can only have occasional superficial public contact.

AR 117-18.

At step four, the ALJ again determined that plaintiff has no past relevant work. AR 126. At step five, the ALJ determined that in the absence of substance abuse, there are would be a significant number of jobs in the national economy that plaintiff could perform, and therefore, she is not disabled. AR 127.

Plaintiff's request for review was denied by the Appeals Council (AR 1-7), and plaintiff appealed to this Court. Dkt. 1.

Plaintiff seeks reversal of the ALJ's March 28, 2016 decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred: (1) in evaluating the medical opinion evidence; (2) in evaluating plaintiff's testimony; and (3) in

assessing plaintiff's RFC in the absence of substance abuse. Dkt. 12. The Court orders reversal and remand for further administrative proceedings.

<u>DISCUSSION</u>

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). "Where there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn,* 495 F.3d at 630.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

I. <u>ALJ's Evaluation of the Medical Opinion Evidence</u>

Plaintiff challenges the ALJ's decision discounting the opinions of Dr. Tasmyn Bowes, Psy.D., Connie L. Campbell, M.A., Terilee Wingate, Ph.D., and that the other medical evidence is consistent with the opinions of Dr. Bowes, Ms. Campbell and Dr. Wingate. Dkt. 12 at 2-10.

If the ALJ finds medical evidence of a substance disorder, the ALJ must determine if the substance abuse disorder is a contributing factor to the determination of disability. 20 C.F.R. § 404.1535. In making this determination, the ALJ must evaluate the extent to which the claimant's mental and physical limitations would remain if plaintiff stopped the substance abuse. If the remaining limitations would not be disabling the substance abuse disorder is a contributing factor to the determination of disability. *Id.* If so, the claimant is not disabled. *Id.*

Three types of physicians may offer opinions in Social Security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)." *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the plaintiff, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Id.* A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31. An ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir. 1984) (internal citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

"[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

A. Examining Psychologist, Dr. Bowes

On November 20, 2013, Dr. Bowes diagnosed plaintiff with major depressive disorder, current moderate; anxiety disorder; alcohol dependence (23 days sober); and cocaine dependence in "SFR"[2] (20 years); and rated her GAF at 54. AR 518. Dr. Bowes found plaintiff had a depressed mood. AR 520. Dr. Bowes opined that plaintiff was moderately limited (defined as "significant limits on the ability to perform one or more basic work activity") in her ability to understand, remember, and persist in tasks by following detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; learn new tasks; adapt to changes in a routine work setting; make simple work-related decisions; communicate and perform effectively in a work setting; complete

---

[2] Dr. Bowes did not define "SFR". AR 518.

a normal workday and workweek without interruptions from psychologically based symptoms; and maintain appropriate behavior in a work setting. AR 518-519. Dr. Bowes' opined that plaintiff's moderate limitations were not the result of alcohol or drug abuse in the past 60 days and that plaintiff's impairments would last following 60 days of sobriety. AR 519.

The ALJ gave Dr. Bowes' opinion significant weight as it applies to plaintiff's mental RFC absent alcohol use. AR 125. The ALJ reasoned that Dr. Bowes' opinion is well-supported and consistent with the results of her mental status examination showing that plaintiff had normal speech, thought process, orientation, perception, memory, fund of knowledge, concentration, abstract thought, insight and judgment. AR 125.

Dr. Bowes' opinion was contradicted Drs. John Gilbert Ph.D. and Steven Haney, M.D., AR 187-199, 201-217. Thus, the ALJ was required to articulate specific and legitimate reasons supported by substantial evidence in the record to discount her opinion. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

As the ALJ did not reject Dr. Bowes' opinion with respect to plaintiff's mental RFC absent alcohol use, AR 125, the ALJ was required to include Dr. Bowes' limitations in the RFC assessment. *See Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (stating that the ALJ was required to include in his RFC assessment claimant's limitations unless ALJ gave reasons for rejecting).

Here, the ALJ found that if plaintiff stopped using alcohol, she would have the RFC to perform light work, can understand, remember, and carry out simple instructions in a setting with no strict production pace, can work in the proximity of coworkers but should not have team assignments and can only have occasional superficial public contact. AR 117-18.

While the ALJ's RFC assessment does account for *some* of the limitations found by Dr. Bowes, it fails to account for the *entirety* of Dr. Bowes' opinion. Dr. Bowes' opinion supports additional limitations and work accommodations. In particular, the RFC assessment fails to account for Dr. Bowes' opinion regarding plaintiff's moderate limitations in her ability to act appropriately interact in a workplace environment (e.g. limitations regarding ability to communicate effectively in a work setting and maintaining appropriate work behavior), adapt to changes (e.g. limitations regarding ability to learn new tasks and adapt to changes), or maintain regular attendance (e.g. be punctual within customary tolerances without special supervision and complete a normal workday and workweek without interruptions from psychologically based symptoms). AR 125, 518-519. Thus, the ALJ erred by failing to include or reject all of Dr. Bowes' limitations findings in the RFC determination.

 "[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

As discussed above, the ALJ's RFC assessment fails to account for all of the moderate limitations described by Dr. Bowes. AR 117-18, 518-19. The vocational expert ("VE") did address some of the limitations found by Dr. Bowes, and testified that if an individual had an emotional outburst that lasted 30 minutes (crying episodes, visible externally) once a week, the

individual would be precluded from employment. AR 180-81. The VE also testified that if an individual was not able to keep up with production pace, needed additional supervision, then the individual would also be precluded from employment. AR 181-83.

The Court cannot find that the ALJ's error is harmless. On remand, the ALJ must reconsider the entirety of Dr. Bowes' opinion and either credit it fully and account for all of the limitations in the RFC assessment, or provide legally sufficient reasons to discount it.

B. Mental Health Counselor, Ms. Campbell

Ms. Campbell offered two opinions, one in July 2014, and the second in October 2015. *See* AR 659, 718-19 (respectively). The ALJ was required to provide germane reasons for giving little or no weight to Ms. Campbell's opinion. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (An ALJ may disregard opinion evidence provided by other medical sources such as therapists, characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so.' ") (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

1. *July 2014 Opinion*

On July 28, 2014, Ms. Campbell stated, "[l]argely due to client's physical issues (Hepatitis C; cirrhosis) in addition to her depression and decreased cognitive ability (related to chronic alcoholism), client seems unable to work for long enough periods of time at any job….Until she maintains sobriety for 1-2 years I don't think she'll be able to work for anyone." AR 659.

The ALJ gave significant weight to Ms. Campbell's July 2014 opinion that chronic alcoholism is a contributing factor that prevents plaintiff from working. AR 125. The ALJ assigned less weight to Ms. Campbell's opinion that plaintiff would need one to two years of

abstinence before plaintiff could work. AR 125. The ALJ reasoned that the medical evidence showed that plaintiff's functioning improved with less than one year of abstinence and Ms. Campbell's opinion was contradicted by plaintiff's daily activities. AR 125.

The ALJ points to Dr. Bowes' opinion and clinical findings indicating that after only 23 days of abstinence, plaintiff's mental status examination was within normal limits. AR 125, 518-19. However, Ms. Campbell's opinion is not inconsistent with Dr. Bowes opinion. As discussed above, Dr. Bowes found that plaintiff had numerous moderate limitations including her ability to complete a normal workday and work week without interruptions from psychologically based symptoms, maintain appropriate behavior in a work setting, perform activities within a schedule, and maintain regular attendance, and that these impairments would last following 60 days of sobriety. AR 518-19.

Although Dr. Bowes estimated that plaintiff would be would be impaired six to 12 months with available treatment, AR 519, this is not materially inconsistent with Ms. Campbell's opinion that plaintiff would need one to two years of abstinence before working, AR 659. Both opinions estimate that it may take at least one year of sobriety before plaintiff is able to maintain employment. AR 519, 659. Thus, the ALJ's finding is unsupported by substantial evidence.

In addition, although plaintiff was well enough to follow through on treatment for her Hepatitis C, take her antidepressant medication, resolve suicidal thoughts, and coordinate care for her boyfriend's son, these activities are not inconsistent with Ms. Campbell's opinion that plaintiff could not work until she had abstained from alcohol for one to two years. AR 659. None of these activities concern plaintiff's ability to interact in the workplace or plaintiff's ability to maintain competitive employment. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

1    This error is not harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Stout v.*

2    *Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (An error is

3    harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's

4    "ultimate nondisability determination."). In the RFC assessment, the ALJ found that plaintiff

5    could perform light work with the exception that plaintiff can carry out simple instructions in a

6    setting with no strict production pace, can work in proximity of coworkers but should not have

7    teamwork assignments and can only have occasional superficial public contact. AR 117-18. Had

8    the ALJ given full credit to Ms. Campbell's July 2014 opinion, the RFC would have included

9    additional limitations in plaintiff's ability to work. *See* AR 659. The ALJ's error with respect to

10   Ms. Campbell's opinion is not harmless and requires reversal. *Stout*, 454 F.3d at 1055.

11          2.   *October 2015 Opinion*

12          On October 6, 2015, Ms. Campbell provided a Medical Source Statement that plaintiff

13   had multiple marked limitations[3] including her ability to understand and remember detailed

14   instructions, carry out detailed instructions, maintain attention and concentration for extended

15   periods, and complete a normal workday and workweek without interruptions form

16   psychologically based symptoms and to perform at a consistent pace without an unreasonable

17   number and length of rest periods. AR 718-19. Ms. Campbell opined that due to plaintiff's

18   Hepatitis C and major depressive disorder, she is unable to work full-time at any job. AR 720.

19          The ALJ afforded no weight to Ms. Campbell's October 2015 opinion as it applies to

20   plaintiff's limitations absent alcohol abuse. AR 114. The ALJ also reasoned that Ms. Campbell

21   did not treat plaintiff for Hepatitis C, and is not qualified to evaluate the limiting effects of that

22

23   _____

24   [3] Marked limitations are defined as "[a] limitation which precludes the ability to perform the designated activity on a
     regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent work schedule." AR 718.

25

condition. AR 126. Further, the ALJ reasoned that plaintiff's fatigue "improved somewhat" with treatment. AR 126. The ALJ also found that Ms. Campbell's October 2015 opinion is not supported by her treatment notes or other evidence of record, because her treatment notes show that plaintiff's depressive symptoms waxed and waned and she was generally able to maintain a full range of daily activities, including providing care for her boyfriend's disabled son. AR 126.

### a. Type of Treatment Provider and Plaintiff's Hepatitis C

The ALJ discounted Ms. Campbell's October 2015 opinion due to the ALJ's assessment that Ms. Campbell was not qualified to treat plaintiff's Hepatitis C condition. AR 125, 720 (Ms. Campbell found that plaintiff was unable to work due to Hepatitis C and depression).

The Court acknowledges that a mental health counselor is not an acceptable medical source. 20 C.F.R. §§ 404.1513(a); SSR 06-03p ("acceptable medical sources" are defined as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists.). Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d).

Because Ms. Campbell is a mental health counselor, she is considered an "other" medical source. *See id.* This does not, however, mean that Ms. Campbell is unqualified to assess plaintiff's limitations. "Other" medical sources are used to show the severity of the plaintiff's conditions and their effect on the plaintiff's ability to function. SSR 06-03p. By virtue of her position as a mental health professional, Ms. Campbell is qualified to assess the severity and effects of plaintiff's depression and its impact on plaintiff's mental and physical capabilities.

Thus, although Ms. Campbell's October 2015 noted plaintiff's Hepatitis C as a partial reason for her fatigue, Ms. Campbell's October 2015 opinion was also relevant to the evaluation of plaintiff's depression, which Ms. Campbell found resulted in low energy, sleep disturbances, inability to concentration, difficulty with decision making and anxiety. AR 718-720. Therefore, this is not a valid reason to reject Ms. Campbell's opinion.

b. Plaintiff's Fatigue

The ALJ found that Ms. Campbell's October 2015 opinion was inconsistent with the opinion of Dr. Asma Siddique, M.D., who noted that plaintiff's fatigue had improved with treatment. AR 126. Sueh an inconsistency may be a valid reason to discount the opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

In November 2014, Dr. Asma Siddique, M.D., noted that in terms of plaintiff's Hepatitis C, she tolerated sofosbuvir and ribavirin treatment very well. AR 691. Dr. Siddique found that plaintiff "had a lot of fatigue prior to treatment which has now resolved and she overall feels well." AR 691. However, the ALJ failed to acknowledge the evidence in the record that plaintiff "lacks energy sometimes," has been "more sedentary," and she will either "sleep too much or sleep will awaken her early and she can't get back to sleep." AR 722. Dr. Wingate diagnosed plaintiff with "longstanding depressed mood with low energy and restricted interests." AR 725. She also noted plaintiff has sleep disturbance. AR 725. Dr. Wingate opined that plaintiff has difficult sustaining attention to tasks without interruption from depressed mood and fatigue. AR 726.

Although the ALJ "need not discuss *all* evidence presented," in this case, the ALJ should have explained why the "significant probative evidence [of plaintiff's fatigue] has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)

(internal citation omitted); *See also Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (finding an ALJ must not "cherry-pick" certain observations without considering their context). Therefore, the Court concludes that the ALJ erred in rejecting Ms. Campbell's opinion because it was contradicted by Dr. Siddique's treatment notes.

### c. Internally Inconsistent

Next, the ALJ gave no weight to Ms. Campbell's opinion reasoning it was inconsistent with her treatment notes, which indicated that plaintiff's symptoms waxed and waned. AR 126. Defendant does not challenge this rationale. *See* Dkt. 13. A physician's opinion of the level of impairment may be rejected because it is unreasonable in light of other evidence in the record. *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Contradictions between a medical source's opinion and her own clinical notes and observations is a legally sufficient basis for rejecting the opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of a medical opinion which was internally inconsistent).

First, although the ALJ notes that plaintiff's symptoms waxed and waned, the ALJ failed provide any discussion explaining how Ms. Campbell's opinion was contradicted by plaintiff's mental health treatment records. AR 126. The ALJ did not elaborate on *which* mental health treatment notes showed plaintiff's symptom's waxed and waned, or how the treatment notes conflicted with Ms. Campbell's opinion. AR 126. Such conclusory reasoning constitutes an insufficient basis on which to give no weight to Ms. Campbell's October 2015 opinion. Therefore, the ALJ erred. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings[;]" conclusory reasons do "not achieve the level of specificity" required

to justify an ALJ's rejection of an opinion); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Moreover, simply because a claimant sometimes reports the absence of a symptom does not contradict other occasions where the symptom is reported, as symptoms and limitations can wax and wane. *Trevizo v. Berryhill*, 871 F.3d 664, 680 (9th Cir. 2017) ("it is not inconsistent with disability that Trevizo was not entirely incapacitated by fatigue at all times, and the treatment notes reflect that Trevizo reported weakness or fatigue at more than half of her appointments with Dr. Galhotra") (internal citation omitted). Therefore, this is not a valid reason to reject Ms. Campbell's opinion.

### d. Inconsistent with Daily Activities

The ALJ also discounted Ms. Campbell's opinion because it was inconsistent with plaintiff's daily activities, including care for her boyfriend's disabled son. AR 126. An inconsistency between treatment records and a doctor's opinion serves as a valid reason to discount the opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

First, in discussing the opinion evidence, the ALJ does not point to any details regarding plaintiff's child care responsibilities. AR 126. The ALJ failed provide any discussion explaining why how Ms. Campbell's opinion was contradicted by this evidence. AR 126. Such conclusory reasoning constitutes an insufficient basis on which to give no weight to Ms. Campbell's October 2015 opinion. Therefore, the ALJ erred. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings[;]" conclusory reasons do "not achieve the level of

specificity" required to justify an ALJ's rejection of an opinion); *see also Trevizo v. Berryhill*, 871 F.3d at 871 F.3d 664, 676 (9th Cir. 2017) (ALJ cannot not rely on a claimant's childcare responsibilities as substantial evidence of non-disability without "specific details" regarding the scope of responsibilities).

Moreover, based on the Court's review of the record, plaintiff's daily activities are not inconsistent with Ms. Campbell's opinion. While the record reflects that plaintiff and her boyfriend cared for his son starting in July 2014, the evidence also indicates the son was able to handle personal hygiene and be left at home for short periods of time. AR 663-664. The evidence does not reflect that plaintiff spent the majority of her day caring for her boyfriend's son. *See id.* Regarding plaintiff's other activities, such as grocery shopping and crocheting, she reported crocheting for one to two hours per week, AR 154-55, and shopping for groceries once per week, AR 379. None of these activities relate to plaintiff's ability to understand, remember, or carry out detailed instructions, maintain attention for extended periods of time, or perform at a consistent pace in a work environment, and therefore, are not inconsistent with Ms. Campbell's opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Accordingly, the ALJ erred in rejecting Ms. Campbell's opinion on this basis.

e. Harmless Error

This error is not harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless if it is not prejudicial to the claimant or inconsequential to the ALJ's ultimate nondisability determination). In the RFC assessment, the ALJ found that plaintiff could perform light work with the exception that plaintiff can carry out simple instructions in a setting with no strict production pace, can work in proximity of coworkers but should not have teamwork assignments

and can only have occasional superficial public contact. AR 117-18. Had the ALJ credited fully Ms. Campbell's October 2015 opinion, the RFC would have included additional limitations in plaintiff's ability to work. *See* AR 718-720. The ALJ's error with respect to Ms. Campbell's October 2015 opinion is not harmless and requires reversal. *Stout*, 454 F.3d at 1055.

C.  <u>Examining Psychologist, Dr. Wingate</u>

Dr. Wingate offered two opinions, both in October 2015. AR 725-26, 729-30. Dr. Wingate's opinion was contradicted, in part, by Drs. Gilbert and Haney, and in part by Dr. Bowes. AR 187-199, 201-217, 518-19. Thus, the ALJ was required to articulate specific and legitimate reasons supported by substantial evidence in the record to discount her opinion. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

1.  *October 8, 2015 Opinion*

On October 8, 2015, Dr. Terilee Wingate, PhD, Licensed Psychologist, diagnosed plaintiff with mild neurocognitive disorder, likely associated with long term alcohol use (noting that she "displayed difficulty with visual attention and memory and very slow mental processing"); persistent depressive disorder (dysthymia, noting "longstanding depressed mood with low energy and restricted interests … [and] sleep disturbance"); and alcohol use disorder, in full remission. AR 725. Dr. Wingate issued a functional analysis and opinion statement:

> [Plaintiff] is able to understand, remember and learn simple and some complex verbal tasks. She has significant difficulty processing information quickly and remembering visually presented information. She has difficulty sustaining attention to tasks throughout a daily or weekly work schedule without interruption from depressed mood and fatigue. She has poor stress tolerance at this time and when pressures are placed upon her she will withdraw. She has sufficient judgment to avoid hazards and make work decisions. She can probably work with a supervisor and a few coworkers. She would probably not work well with a lot of coworkers or the general public. If granted funds she appears capable.

AR 726.

The ALJ gave limited weight to Dr. Wingate's October 8, 2015 assessment that plaintiff would have difficulty sustaining attention to tasks throughout a daily or weekly work schedule without interruption from depressed mood and fatigue because the mental status examination and testing did not support this assessment. AR 126.

On October 11, 2015, Dr. Wingate completed a check-box form in which she rated plaintiff as moderately limited (more than a slight limitation but individual is still able to function satisfactorily) to markedly limited (serious limitation and a substantial loss in the ability to effectively function) in her ability to carry out complex instructions (moderate limitation related to verbal, marked limitation related to visual), and moderately limited in her ability to understand and remember complex instructions; make judgments on complex work-related decisions; interact appropriately with coworkers; and respond appropriately to usual work situations and changes in a routine setting. AR 729-30. Dr. Wingate noted that plaintiff's limitations are not affected by current substance abuse. AR 730.

The ALJ gave more weight to Dr. Wingate's October 15, 2015 opinion, reasoning this opinion is consistent with the examination findings as well as other evidence in the record. AR 126. Specifically, the ALJ noted that plaintiff is able to maintain daily activities, use public transit, grocery shop, provide care for boyfriend's disabled son and craft blankets. AR 126.

An ALJ need not accept an opinion that is brief, conclusory, and inadequately supported by clinical findings. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is

the ALJ's conclusion that must be upheld." *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ reasonably construed the objective evidence in the record as indicating plaintiff's ability to maintain concentration and attention is not as limited as found by Dr. Wingate in her October 8, 2015 opinion. During the mental status examination, Dr. Wingate found that plaintiff's memory and attention to task were fair. AR 723.

Dr. Wingate performed several tests: Wechsler Adult Intelligence Scale-IV, Wechsler Memory Scale-IV and Trail Making test to evaluate plaintiff's cognitive functioning. AR 723. Dr. Wingate found that plaintiff's ability to sustain attention, concentration and exert mental control is in the average range, and plaintiff obtained a score of 97 on the Working Memory Index, which is at the 42nd percentile for her age group. AR 723. However, plaintiff scored below the 10th percentile for her age group in the Trail Making Test, which measures visual attention and ability to shift attention. AR 723-24. Dr. Wingate noted that there was significant impairment in plaintiff's visual reasoning and information processing, and that plaintiff processes visual information very slowly and she cannot shift attention between tasks very effectively. AR 725-26.

With respect to the ALJ's finding that plaintiff's daily activities are consistent with Dr. Wingate's October 15, 2018, opinion, as discussed above, none of these activities relate to plaintiff's ability to carry out complex instructions, ability to understand and remember complex instructions; make judgments on complex work-related decisions; interact appropriately with coworkers; and respond appropriately to usual work situations and changes in a routine setting. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). However, because the Court concludes the ALJ gave one valid reason in assigning limited weight to Dr. Wingate's October 8,

2015 opinion and more weight to her October 11, 2015 opinion, the ALJ's error regarding

plaintiff's daily activities is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115, 1117 (9th Cir.

2012) ("[H]armless error principles apply in the Social Security context."); *Carmickle v. Comm'r

of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("the relevant inquiry in this context is .

. . whether the ALJ's decision remains legally valid, despite such error"); *Batson v. Comm'r of

Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004) (finding ALJ's error harmless because the

ALJ provided other legally valid reasons for discrediting the plaintiff's testimony).

### D. Other Medical Evidence

Plaintiff argues other medical evidence is consistent with the opinions of Dr. Bowes, Ms.

Campbell, Dr. Wingate and plaintiff's testimony, and that this Court should hold the ALJ's

failure to properly evaluate all of the medical evidence is harmful error. Dkt. 12 at 8-10. Plaintiff

lists of treatment notes and clinical findings that purportedly support her case, but she fails to

identify a specific argument related to this evidence. Dkt. 12 at 8-10. To preserve an issue, the

party's contentions must "be accompanied by reasons" and a court will not manufacture

arguments" for a party. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir.

2003). Therefore, the Court will not consider any vague assertions of legal error presented in

plaintiff's opening brief and instead, relies only on the arguments clearly presented.

## II. The ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony

Plaintiff argues the ALJ improperly rejected plaintiff's subjective symptom testimony.

Dkt. 12 at 10-15. Plaintiff alleged limitations from depression and Hepatitis C. AR 152-53.

Plaintiff testified that she cannot work because she does not have the energy. AR 152.

The ALJ gave three reasons for rejecting plaintiff's subjective symptom testimony,

finding: (1) plaintiff made inconsistent statements about her alcohol usage; (2) plaintiff's

testimony was inconsistent with her daily activities; and (3) plaintiff's testimony was inconsistent with the objective medical evidence. AR 123-24.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider a claimant's prior inconsistent statements concerning symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

The Court concludes not all of the reasons the ALJ provided for discounting plaintiff's subjective symptom testimony were proper. Nevertheless, the ALJ's determination is supported by substantial evidence in the record overall. *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001).

A.     Inconsistent Statements

The ALJ discounted Plaintiff's subjective symptom testimony because plaintiff made inconsistent statements regarding her mental health complaints. AR 123. An ALJ may consider prior inconsistent statements concerning symptoms and "other testimony by [plaintiff] that appears less than candid in weighing plaintiff's credibility." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039

(9th Cir. 2008). Here, the ALJ provided several examples to support her finding, which are supported by the record.

In April 2013, plaintiff reported to Dr. Siddique that she had completely abstained from alcohol for close to three years, AR 617. In February 2014, plaintiff reported she had completely abstained from alcohol for the last four years. AR 601. In 2016, plaintiff reported to Dr. Siddique that she had abstained from alcohol for at least three years, AR 735, 740. However, the record reflects plaintiff continued to drink alcohol in 2013, 2014, and 2015. *See* AR (listed chronologically) 639 (July 2012 - plaintiff reported she had not had a drink in the last eight to ten days), 651-53 (May 2013 - presented to emergency department requesting alcohol detox), 465 (October 2013 – plaintiff presented to emergency department for alcohol detox), 514 (November 2013 – plaintiff reported drinking alcohol 23 days prior), 654-58 (February 2014 – plaintiff presented to emergency department with wrist injury and reported having an alcohol problem), 633-37 (May 2014 – plaintiff presented to emergency department after falling from ladder due to intoxication), 716 (August 2015 – plaintiff reported missing a counseling appointment due to drinking beer), 746 (October 2015 – plaintiff reported drinking whiskey).

Moreover, in October 2015, plaintiff told Dr. Wingate that she last drank alcohol in February 2015, AR 722, which was inconsistent with her report to Ms. Campbell that she missed an appointment due to drinking beer in August 2015, AR 716. At the hearing in February 2016, plaintiff testified that she would have one year of sobriety in the upcoming month, AR 152, however, as noted above, plaintiff reported missing a counseling appointment due to drinking beer in August 2015, AR 716, and reported drinking whiskey in October 2015, AR 746.

Therefore, the Court finds the ALJ's citations to the record support a finding that plaintiff's statements regarding her alcohol use are inconsistent. Although the ALJ's determination is supported by the record, it should also be noted that plaintiff stated during the hearing she was having difficulty recounting history because her memory, short term and long term, is terrible. AR 170-172.

B.        Plaintiff's Daily Activities

The ALJ determined Plaintiff's activities of daily living illustrate Plaintiff's functional limitations are not as limiting as she has alleged. AR 124. The Ninth Circuit has recognized two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether the activities contradict the claimant's other testimony and (2) whether the activities of daily living meet "the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ cited to plaintiff's ability to crochet, operate a computer including using a keyboard and mouse, watch TV, weed, maintain finances, go to AA meetings daily, prepare simple meals, take public transit or walk, coordinate care for her boyfriend's disabled son, manage her daily routine including using a calendar or make lists, and take her antidepressant medication. AR 124-25.

However, the record does not support this conclusion. Plaintiff's testimony indicates her activities of daily living are more limited than noted by the ALJ. For example, plaintiff testified she can crochet for ten hours per week. AR 155. Plaintiff testified her mental problems make it stressful for her to ride the bus when she goes to places like Seattle and Tacoma, and that she only goes to Seattle hospitals once per month. AR 159. Plaintiff testified her AA meetings are seven days per week and one hour long. AR 165. Plaintiff testified she is not able to do household chores including cooking for the last two years. AR 167.

Plaintiff testified she has to write lists for the grocery store because she has trouble remembering things. AR 170. Plaintiff testified she is not able to concentrate on a half-hour TV program and will lose her train of thought. AR 170-71. Plaintiff testified she does not walk outside of the house because she doesn't have the energy. AR 172. Plaintiff testified she wears a brace on her right hand (dominant hand) every day for at least an hour or two, so she can continue regular activities such as crocheting. AR 154. Plaintiff testified that for at least the last two years, she has been lying down every day for at least three hours, between 1:00 p.m. to 4:00 p.m. AR 155, 167.

The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping [and] driving a car, ... does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (internal citation omitted). The ALJ did not cite to specific evidence demonstrating plaintiff drives, shops, or does any other activity aside from attending AA meetings for one hour on a daily basis. *See* AR 124-25. Thus, the evidence fails to reveal plaintiff spends a substantial part of her day performing any of these activities or the level at which she performed them is inconsistent with her other testimony. Therefore, this is not a clear and convincing reason to discount plaintiff's subjective symptom testimony.

Regarding plaintiff's ability to coordinate care for her boyfriend's disabled son, many home activities are not easily transferable to a work environment, "where it might be impossible to periodically rest or take medication.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). The Ninth Circuit in *Trevizo* found the ALJ could not rely on a claimant's childcare responsibilities as substantial evidence of non-disability without "specific details" regarding the

scope of responsibilities. *Id.* at 676. The same reasoning applies to plaintiff. Plaintiff reported to Ms. Campbell that in July 2014 she coordinated medical care and social services for her boyfriend's disabled son. AR 664. However, the record also reflects that the son is able to stay at home for short periods by himself and he continued to improve including responsibilities for his personal hygiene. AR 664. Absent more "specific details," this evidence is not sufficient to show that plaintiff could work as a full-time child care worker nor does it show that plaintiff's child care responsibilities are inconsistent with her other testimony. *See Trevizo*, 871 F.3d at 676.

Objective Medical Evidence

The ALJ also found plaintiff's testimony was inconsistent with the objective medical evidence. AR 124. Determining a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999). However, a claimant's pain testimony may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc)). The same is true with respect to a claimant's other subjective complaints. *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995).

Here, the ALJ cited to evidence that plaintiff stopped attending physical therapy for her right wrist, and that her medications did not cause side effects. AR 124 (citing AR 586, 588, 560, 598, 601, 664, 671). However, plaintiff did not testify that she is unable to work due to her right wrist or based on the side effects related to her medications. AR 152-53. Rather, plaintiff testified she is unable to work due to her Hepatitis C and depression. AR 153.

Plaintiff testified she fractured her right wrist two years ago and has difficulty using her hands, but does not allege that this limitation is disabling. AR 154, 157. And although plaintiff testified that her Sensipar medication gives her "tummy trouble" such as throwing up, she testified that she takes it at night and the side effects resolve itself by the time she wakes up in the morning. AR 150-51.

Plaintiff was also questioned at the hearing about her Hepatitis C treatment, stating it was "horrible," but she did not detail any specific medication side effects. AR 160, 169-70. In sum, plaintiff's testimony does not reflect any her right wrist or medication side effects affected her ability to perform any work-related functions. Thus, any such limitations or symptoms are not relevant to her testimony she is unable to work because of depression and Hepatitis C.

The ALJ also noted plaintiff's reported to Dr. Wingate that she only has suicidal thoughts when she is drinking, and does not have such thoughts when she abstains from alcohol. AR 124, 722-723. Lack of suicidal thoughts does not undermine plaintiff's testimony related to her depression -- plaintiff also alleged symptoms such as fatigue, anxiety, confusion, disorientation, memory problems. AR 166-72. Moreover, at the hearing, plaintiff testified that she did not report suicidal thoughts to Ms. Campbell because she was afraid of being hospitalized, AR 166, and that since she stopped drinking her depression has not improved, AR 172. Therefore, substantial evidence does not support the ALJ's finding.

The ALJ also found that plaintiff's testimony that she has memory problems and needs questions repeated, but Dr. Bowes found that plaintiff had no difficulty following a conversation. AR 124 (citing AR 520), 170. However, Dr. Bowes also found that plaintiff had concentration and short term memory difficulty, and noted plaintiff's Trails A and B test results, which

suggested a cognitive impairment, AR 517, 520, which are objective findings that support plaintiff's alleged limitations.

Accordingly, the Court concludes this is not a clear and convincing reasons for rejecting plaintiff's subjective complaints.

### III.   RFC, Hypothetical Questions, and Step Five Findings

Plaintiff argues that due to the alleged errors, the RFC was not supported by substantial evidence. Because the Court has concluded that the ALJ erred in reviewing the medical opinion evidence of Dr. Bowes and Ms. Campbell, and that this matter should be reversed and remanded for further consideration on this basis, *see supra*, section I, the remainder of the sequential disability evaluation process, including the RFC assessment and step five, will need to be re-evaluated.

### IV.   Remedy

Plaintiff argues that this case should be remanded for an award of benefits, or in the alternative, remanded for further administrative proceedings. Dkt. 12 at 16-17. "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). A direct award of benefits would be warranted if the following conditions are met: First, the record has been fully developed; second, there would be no useful purpose served by conducting further administrative proceedings; third, the ALJ's reasons for rejecting evidence (claimant's testimony or medical opinion) are not legally sufficient; fourth, if the evidence that was rejected by the ALJ were instead given full credit as being true, then the ALJ would be required on remand to find that the claimant is disabled; and fifth, the reviewing court has no serious doubts as to whether the claimant is disabled. *Leon v.*

*Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (amended January 25, 2018); *Revels v. Berryhill,* 874 F.3d 648, 668 (9th Cir. 2017).

If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon v. Berryhill,* at 1045 (quoting *Treichler v. Comm'r of Social Sec. Admin.,* 775 F.3d 1090, (9th Cir. 2014)). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels v. Berryhill,* 874 F.3d at 668 (9th Cir. 2017).

As discussed above, the ALJ failed to provide legally sufficient reasons for discounting the opinions of Dr. Bowes and Ms. Campbell (July 2014 and October 2015 opinions). Accordingly, issues remain regarding the medical evidence in the record concerning plaintiff's functional limitations, and therefore serious doubt remains with respect to the disability determination. Accordingly, remand for further consideration is warranted. Specifically, on remand the Commissioner shall re-evaluate the opinions of Dr. Bowes and Ms. Campbell, plaintiff's residual functional capacity, plaintiff's ability to perform her past relevant work, and, if necessary, plaintiff's ability to perform other jobs existing in significant numbers in the national economy.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings.

Dated this 19th day of December, 2018.


_Theresa L. Fricke_
_____
Theresa L. Fricke
United States Magistrate Judge